UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

COLUMBIA GAS TRANSMISSION, LLC, )
                              )
         Plaintiff,             )
                              )
v.                                )
                              )
RALPH AND SALLY HOYT,     )
                              )
527 Uhl Lane,                )
Proctor, West Virginia 26055   )
                              )
         Defendants.      )

Cause No.:  **5:22-CV-155 (Bailey)**

Division:  **Wheeling**

ELECTRONICALLY FILED
Jun 17 2022
U.S. DISTRICT COURT
Northern District of WV

### COLUMBIA GAS TRANSMISSION, LLC'S
### <u>VERIFIED COMPLAINT AND REQUEST FOR INJUNCTIVE AND OTHER RELIEF</u>

COMES NOW Plaintiff Columbia Gas Transmission, LLC ("Columbia") and, for its Verified Complaint and Request for Injunctive and Other Relief, states as follows:

### <u>THE PARTIES</u>

1.     Columbia is, and at all times relevant herein has been, a limited liability company, duly organized and existing under the laws of the State of Delaware. Columbia is properly authorized to do business, and is in active and good standing, in the State of West Virginia.

2.     Upon information and belief, Defendants Ralph and Sally Hoyt (collectively, the "Hoyts") are individuals whose primary residence is located at 527 Uhl Lane, Proctor, West Virginia 26055.

### <u>JURISDICTION AND VENUE</u>

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the citizenship of the parties is completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      Columbia is a limited liability company, and its sole member—Columbia Pipeline Group, Inc.—is not a citizen of the State of West Virginia. Columbia Pipeline Group, Inc. is a Delaware corporation with its principal place of business in Delaware.

5.      Upon information and belief, Ralph Hoyt is domiciled in West Virginia and, accordingly, is a West Virginia citizen.

6.      Upon information and belief, Sally Hoyt is domiciled in West Virginia and, accordingly, is a West Virginia citizen

7.      This Court also, separately, has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as, among other things, it involves a breach of contract claim involving Columbia's exercise of rights under a certificate of public convenience and necessity issued by the Federal Energy Regulatory Commission ("FERC") that authorized the construction of the pipeline project at issue in this action and Columbia's related obligations to comply with applicable federal law and regulations, including without limitation, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") Regulations.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the property at issue is located in Marshall County, which is situated within the Northern District of West Virginia.

## **BACKGROUND**

9.      Columbia is in the business of, *inter alia*, constructing and/or operating pipelines for the transportation of natural gas in interstate commerce pursuant to authorization granted by, and subject to, FERC jurisdiction.

10.     On January 19, 2017, FERC granted Columbia a certificate of public convenience and necessity (the "Certificate"),[1] providing Columbia the right to, among other things, construct 160 miles of natural gas pipeline, compression facilities, and related appurtenances (collectively, the "LXP Pipeline" or the "Pipeline") in West Virginia's northern panhandle, southeastern Ohio, and southwestern Pennsylvania; abandon in-place an approximately 28.2 mile segment of its existing 20-inch R501 pipeline located in southeastern Ohio and replace that capacity with 27.2 miles of a new larger diameter pipeline; and construct a related pipeline loop in southern West Virginia designed to facilitate the transportation of natural gas along the integrated pipeline system (the "Project").

11.     To construct the Project, Columbia required certain permanent and temporary easements on, over, and across certain property that the LXP Pipeline now traverses (collectively, the "Necessary Easements"), including one (1) parcel of real property in Proctor, West Virginia (Marshall County) owned by the Hoyts, identified by Columbia for the Project as WV-MA-0311A.000 (the "Parcel").

12.     The Hoyts executed a right-of-way agreement through which they voluntarily conveyed to Columbia a permanent right-of-way and temporary construction easements on and across the Parcel in exchange for consideration.

13.     The Project was placed in service on or about January 18, 2018.

**THE RIGHT-OF-WAY AGREEMENT**

14.     As described above, the Hoyts voluntarily conveyed to Columbia a right-of-way on and across the Parcel. That conveyance was memorialized by a West Virginia Right-of-Way Agreement executed by the Hoyts on or about August 31, 2016 and amended on or about March 29, 2017 (the "Right-of-Way Agreement"). (A true and correct copy of the Right-of-Way

_____

[1] *See* FERC Docket ("Dkt.") No. CP-15-514-000.

Agreement is attached hereto and incorporated herein by this reference as **Exhibit 1**; *see* pp. 1–3.)

15.     The Right-of-Way Agreement was recorded on or about September 8, 2016 at Book 901, Page 0463 of the Records of the Marshall County, West Virginia Recorder's Office. (*See* **Ex. 1**.)

16.     The Right-of-Way Agreement was amended on or about March 29, 2017 to modify Exhibit A attached to the Right-of-Way Agreement depicting and describing the "Permanent Right-of-Way Area." The Amendment to the Right-of-Way Agreement was recorded on or about April 12, 2017 at Book 919, Page 0463 of the Records of the Marshall County, West Virginia Recorder's Office.  (A true and correct copy of the Amendment to the Right-of-Way Agreement is attached hereto and incorporated herein by this reference as **Exhibit 2.**). Hereinafter, the Right-of-Way Agreement, as amended, is simply referred to as the "Right-of-Way Agreement."

### The Permanent Right-of-Way Granted to Columbia

17.     The Right-of-Way Agreement, among other things, expressly grants "a permanent right-of-way" to: "(1) construct, operate, maintain, replace, repair, alter the size of (anywhere within the right-of-way area defined below),[2] and remove, abandon or retire a pipeline for transporting gas . . . and appurtenant facilities . . .; (3) perform pre-construction work; (4) ingress to and egress from the right-of-way area . . .; and (5) exercise all other rights necessary or convenient for the full use and enjoyment of the rights herein granted . . . ." (*See* **Ex. 1**, at pp. 1–2.)

_____

[2] This area is referred to in the Right-of-Way Agreement and herein as the "Permanent Right-of-Way Area."

18.    The Right-of-Way Agreement further provides Columbia with "the right to change the location of an installed pipeline and permanent right-of-way area as may be necessary or advisable as the result of any conditions or events beyond [Columbia's] control, such as…ground slips…or the like." (*See* **Ex. 1**, at p. 3.)

### *The Temporary Construction Easements Granted to Columbia*

19.    The Right-of-Way Agreement further grants to Columbia, among other things, "a temporary easement seventy-five (75) feet wide as depicted in Exhibit A [to the Right-of-Way Agreement], and adjoining the permanent pipeline right-of-way, for the purpose of enabling [Columbia] to initially construct the pipeline or to later relocate the pipeline or lay additional pipelines and to conduct all activities incident thereto, including restoration or clean-up activities." ("Temporary Construction Easements"). (*See* **Ex. 1**, at p. 3.)

### AS-BUILT PIPELINE AND ESTABLISHED EASEMENT AREAS

20.    The LXP Pipeline construction and installation work for which the Permanent Right-of-Way Area and the Temporary Construction Easements were acquired was concluded in or around January 2018.  Active construction work was conducted on the Parcel at various times during the Project period.

21.    The LXP Pipeline was put into operation on or around January 18, 2018, and it has been in continuous operation since.

22.    The Permanent Right-of-Way Area is comprised of a strip of land consisting of approximately 3.11 acres that crosses the Parcel, as more specifically depicted and described in the Right-of-Way Agreement. (*See* **Ex. 1, Ex. 2** and the exhibits attached thereto.)

23.    The Temporary Construction Easements are comprised of approximately 4.81 acres located adjacent to the Permanent Right-of-Way Area, as more specifically depicted and described in the Right-of-Way Agreement. (*See* **Ex. 1** and the exhibits attached thereto.)

### NECESSARY PIPELINE INTEGRITY AND PREVENTATIVE SAFETY WORK

24.     Under applicable federal and state laws and regulations, Columbia must endeavor to ensure the safe operation of the Pipeline by, among other things, identifying and mitigating event(s) and/or condition(s)—such as preventing slips—which may potentially impair the "serviceability . . . structural integrity or reliability" of the Pipeline by, when practicable, "tak[ing] . . . steps to protect [the Pipeline] . . . from washouts, floods, unstable soil, landslides, or other hazards that may cause the [P]ipeline to move or to sustain abnormal loads." *See generally* PHMSA Regulations, including, without limitation, 49 CFR §§ 191.23(3), (5); 49 CFR § 192.317(a); *see also* the West Virginia Water Pollution Control Act, including, without limitation, W. Va. Code R. 47-11-2 ("It shall be the responsibility of any person who causes or contribute in any way to the spill or accidental discharge of any pollutant or pollutants into state waters to immediately take any and all measures necessary to contain such spill or discharge."); W. Va. Code R. 47-11-2.5.a and b; and W. Va. Code R. 47-2-3.2.

25.     Following completion of the Project, Columbia continued to monitor the safe operation of the Pipeline and conduct preventative maintenance of the Pipeline.

26.     In the process of monitoring the safe operation of the Pipeline, Columbia discovered that the ground has begun to disappear around a portion of the Pipeline located on the Parcel, causing a "slip" that exposes the Pipeline to the elements (the "Slip"). The Slip has resulted in, among other things, a portion of the Pipeline becoming uncovered and exposed, a condition which, if unremedied, threatens the safe operation of the Pipeline and implicates the Pipeline's serviceability, structural integrity and reliability.

27.     Upon discovery of the Pipeline Slip on the Parcel, Columbia determined that – in accordance with its Exposure and Slip Repairs and Restoration program – immediate repair work on the Pipeline had to be carried out in order to ensure the serviceability, integrity, and reliability

of the Pipeline, as well as to protect the health and safety of the public in general during the course of, and after, the work activities ("Necessary Work").

28.     The Necessary Work may include, without limitation, excavation of sediment surrounding the Pipeline within the Permanent Right-of-Way; temporary installation of flume pipe and sandbags surrounding the Pipeline within the Permanent Right-of-Way; the installation of erosion control device(s) that will then be monitored during the course of repairs to identify and address any additional maintenance required to prevent future damage or slippage of the Pipeline; the repair of erosion channels and water bars already installed as part of the Permanent Right-of-Way; the stabilization of slopes within the Permanent Right-of-Way to prevent future damage or slippage of the Pipeline; and, ultimately, replacement, and/or relocation of the affected portions of the Pipeline within the Permanent Right-of-Way as may be necessary or appropriate.

29.     After discovering the Pipeline slip and determining that the Necessary Work needed to commence as soon as possible, Columbia, on or about September 14, 2021, advised the Hoyts – in person through Columbia agent, James Paugh – as to the nature of and reasons for the Necessary Work ("Columbia's Notice").

30.     Over the course of the ensuing weeks and months, Columbia attempted to dialogue with the Hoyts, both directly and through a series of different attorney representatives for the Hoyts at various times, regarding Columbia's need to conduct the Necessary Work.

31.     During the above-referenced discussions with Columbia, the Hoyts made it clear that they would not allow Columbia to carry out the Necessary Work on the Parcel absent Columbia's payment of usurious sums and its acquiescence to other unreasonable demands— notwithstanding Columbia's existing rights under the Right-of-Way Agreement and applicable law.

32.     The Hoyts have, in the past, resorted to "self-help" during disputes with Columbia regarding the exercise of easement rights, including, among other things, using heavy equipment and vehicles to block egress preventing Columbia work crews and equipment from exiting the Right-of-Way during work periods.

33.     Given the Hoyt's expressed hostility towards the Necessary Work being performed absent Columbia's capitulation to their usurious demands, Columbia's existing rights under the Right-of-Way Agreement and applicable law notwithstanding, the Slip went unrepaired and threatened and/or began to impact a surface waterbody.

34.     On or about March 7, 2022, Columbia notified the West Virginia Department of Environmental Protection ("WVDEP") of the slip and its negative impact on a surface waterbody.  (*See* April 19, 2022 WVDEP Site Evaluation Report, a true and correct copy of which is attached hereto and incorporated herein by this reference as **Exhibit 3**, at pp. 2–3).

35.     The WVDEP subsequently conducted on-site inspections of the LXP Project on or about March 8, March 14, and March 21, 2022 (collectively, "the March 2022 Inspections"). (*See* **Ex. 3**, at pp. 2–3.)

36.     During the March 2022 Inspections, the WVDEP observed the slip on the Parcel and noted that Columbia was required to take remedial action to address the slip and the safety issues that it presented.  (*See* **Ex. 3**, at pp. 2-3.)

37.     As of the dates of the March 2022 Inspections, the Hoyts still refused to allow Columbia access to the Parcel to perform the Necessary Work in accordance with its existing contractual, legal, and equitable rights.

38.     The WVDEP conducted a follow-up inspection of the LXP Project on April 18, 2022 (the "April 2022 Inspection"), and again noted that the slip and the safety issues that it presented had not yet been addressed/repaired.  (*See* **Ex. 3**, at pp. 1-3.)

39.    Following the April 2022 Inspection, the WVDEP issued Columbia a Notice of Violation (No. W22-25-022-SMC) with respect to the slip ("Notice of Violation") and provided Columbia with twenty (20) days to provide a written response to the WVDEP detailing actions taken by Columbia to correct the violation.  (*See* **Ex. 3**, at pp. 3–6.)

40.    On or about May 10, 2022, Columbia timely issued its written response to the WVDEP, detailing the Necessary Work that it planned to take in an effort to address the slip-related issues and to maintain compliance with all applicable permits and regulations ("Columbia's Notice of Violation Response").  (*See* May 10, 2022 Letter to the WVDEP, a true and correct copy of which is attached hereto and incorporated herein by this reference as **Exhibit 4**.)

41.    In its Notice of Violation Response, Columbia notified the WVDEP that it had "encountered challenges in dealing with the owner of the property [the Hoyts] where most of the deficiencies noted by WVDEP are located, which has delayed [its] ability to immediately address the identified issues."  (*See* **Ex. 4**, at p. 1.)

42.    Despite the above challenges, Columbia attempted to carry out all other repairs identified by the WVDEP that could be done for the LXP Project outside of the boundaries of the Parcel.  (*See* **Ex. 4**, at p. 1.)

43.    During the week of May 2, 2022, Columbia mobilized a third-party contractor that it had hired to complete Pipeline restoration and slip repair activities across the LXP Project, but excluding the Parcel.  Columbia also hired a "hand crew" to conduct – without the use of heavy equipment – sediment removal from the impacted stream channels, as well as installation and maintenance of erosion and sediment control devices, within the Right of Way on the Parcel as a temporary measure to address certain of the slip-related safety issues violations.  (*See* **Ex. 4**, at p. 1.)

44.    Absent access to the Hoyts' Parcel to perform the Necessary Work unobstructed by the Hoyts, Columbia is unable to properly and fully address all on-site issues raised by the WVDEP.  (*See* **Ex. 4**, at p. 1.)

45.    On or about May 9, 2022, Columbia, in a final effort to persuade the Hoyts to not interfere with Columbia's rights to perform the Necessary Work, sent the Hoyts a letter which, among other things, again explained Columbia's existing rights to perform the Necessary Work on the Parcel. (*See* May 9, 2022 Letter to the Hoyts, a redacted true and correct copy of which is attached hereto and incorporated herein by this reference as **Exhibit 5**.)

46.    The Hoyts failed to respond to Columbia's May 9, 2022 letter by the stated deadline contained in the letter.

47.    The Hoyts continue to refuse to allow Columbia to perform the Necessary Work in accordance with its existing contractual rights, and, by their prior communications, the Hoyts have indicated that they will not permit Columbia to access the Parcel to complete the Necessary Work.

48.    Columbia must affect the Necessary Work to ensure the structural integrity, safety, and reliability of the Pipeline; to ensure that the health and safety of the public in general is protected; and to maintain compliance with applicable law and regulations.

49.    The vast majority of the Necessary Work activities will be confined to the limits of Columbia's existing Easement Areas on the Parcel under the Right-of-Way Agreement.  (*See* **Ex. 1**, at pp. 1–2.)  That is, with minor exception, only portions of the Parcel that were previously disturbed by Columbia's original LXP Project work will be impacted by the Necessary Work.

50.    Should Columbia not be permitted to perform the Necessary Work in a timely manner, Columbia faces potential regulatory and statutory fines and penalties which may equal

or exceed $25,000.00 per violation per day. (*See generally* PHMSA Regulations and WVDEP Regulations).

51.     Further, should Columbia not be permitted to perform the Necessary Work in a timely manner, Columbia will incur mobilization/demobilization costs of approximately $50,000.00 relative to its teams of contractors and equipment needed to perform this highly specialized work. Columbia will also potentially incur approximately $51,200.00 per week in costs arising from idled work equipment and crews.

52.     Moreover, Columbia will face harm to its reputation if it is not allowed to carry out the Necessary Work in a timely manner as instructed by the WVDEP.

53.     Barring any unforeseen circumstances or *force majeure*, the Necessary Work on the Parcel, from initial site disturbance to completion (excluding only final remediation/reclamation work) is expected to take approximately eight (8) weeks or less.

54.     Any portion of the Parcel affected by the Necessary Work will be promptly restored, as nearly as is practicable, to its pre-Necessary Work condition.

55.     Under the terms of the Right-of-Way Agreement and/or under applicable law, Columbia shall be responsible to the Hoyts for demonstrable damages, if any, occasioned by the Necessary Work.

56.     On or about May 9, 2022, Columbia made one final attempt to persuade the Hoyts – who, by that time, had informed Columbia that they were no longer represented by counsel – to allow it to conduct the Necessary Work on the Parcel, again explaining its existing rights to perform the Necessary Work and offering reasonable and just compensation to allow Columbia to perform the Necessary Work on the Parcel even though it was not obligated to do so.  (*See* May 9, 2022 Letter from Columbia to the Hoyts, a true and correct redacted copy of which is attached hereto and incorporated herein by this reference as **Exhibit 5**.)

11

57.     The Hoyts failed to respond to Columbia's May 9, 2022 letter by the stated deadline contained in the letter.

58.     Accordingly, the Hoyts have refused to allow Columbia to perform the Necessary Work in accordance with its existing contractual, legal, and equitable rights, and, by the Hoyts' last communications, they have indicated that they will not permit the Necessary Work to proceed.

## COUNT I
### (Preliminary and Permanent Injunction)

59.     Columbia restates and incorporates by this reference the allegations of paragraphs 1 through 55 above as if set forth more fully herein.

60.     As set forth above, the Right-of-Way Agreement expressly grants Columbia "a permanent right-of-way" to, among other things, "construct, operate, maintain, replace, repair, alter the size of (anywhere within the [Permanent Right-of-Way Area]) . . . [the] [P]ipeline" and to "perform pre-construction work." (*See* **Ex. 1**, at p. 1.)

61.     The Right-of-Way Agreement further provides Columbia with "the right to change the location of an installed pipeline and permanent right-of-way area as may be necessary or advisable as the result of any conditions or events beyond [Columbia's] control, such as…ground slips…or the like." (*See* **Ex. 1**, at p. 2-3.)

62.     The Right-of-Way Agreement also grants to Columbia the Temporary Construction Easements to, among other things, "later relocate the [P]ipeline or lay additional pipelines and to conduct all activities incident thereto, including restoration or clean-up activities." (*See* **Ex. 1**, at p. 3.)

63.     The vast majority of the Necessary Work will be performed within, and confined to, the Permanent Right-of-Way Area and the Temporary Construction Easements area.

64.      Columbia seeks the issuance of preliminary and permanent injunctive relief prohibiting the Hoyts from preventing, obstructing, or otherwise interfering with Columbia's rights to carry out the Necessary Work on the Parcel.

65.      Absent the Court's issuance of the requested injunctive relief, Columbia will suffer irreparable harm, which may include, but not be limited to, incurring regulatory and statutory fines and penalties; suffering harm to its reputation; and incurring substantial monetary damages associated with delays in performing the Necessary Work, including, but not limited to, mobilization and demobilization costs and idled equipment and work crew costs, which, upon information and belief, the Hoyts will be unable to satisfy.

66.      The likelihood of Columbia's success on the merits is apparent here, where the Necessary Work is expressly authorized by the Right-of-Way Agreement as well as under well-established easement law and is further in the interest of public health and safety.

67.      Columbia has no adequate remedy at law. Absent the Court's issuance of the requested injunctive relief prohibiting the Hoyts from preventing, obstructing, or otherwise interfering with Columbia's right to perform the Necessary Work, Columbia will incur substantial damages which, upon information and belief, the Hoyts will be unable to satisfy. Specifically, Columbia will, among other things, be put at risk of incurring regulatory and statutory fines and penalties; sustaining harm to its reputation; and incurring damages associated with delays in performing the Necessary Work, including, but not limited to, mobilization and demobilization costs and idled equipment and work crew costs, while also delaying this work that is critical to protect the health and safety interests of the public.

68.      The Hoyts will not be harmed by the issuance of the injunctive relief sought, as Columbia seeks merely to perform the Necessary Work as authorized by the Right-of-Way Agreement and applicable law and, in doing so, will restore any affected property to its pre-

Necessary Work condition. Furthermore, Columbia will compensate the Hoyts for damages (if any) occasioned to the Parcel as a result of the Necessary Work.

69.    As a delay in performing the Necessary Work poses, among other things, potential harm to the integrity, serviceability, and reliability of the Pipeline, which places the health and safety interests of the public in general at risk, the general public has a substantial interest in the prompt performance of the Necessary Work.

70.    For the foregoing reasons, the hardships associated with injunctive relief weigh heavily in Columbia's favor.

WHEREFORE, for the foregoing reasons, Columbia Gas Transmission, LLC, respectfully prays that this Court enter its Order: (i) issuing a preliminary injunction prohibiting the Hoyts from preventing, obstructing, or otherwise interfering with Columbia's rights to perform the Necessary Work; (ii) after a final hearing on the merits, entering a permanent injunction prohibiting the Hoyts from preventing, obstructing, or otherwise interfering with Columbia's rights to perform the Necessary Work; (iii) awarding Columbia its costs and expenses incurred herein; and (iv) awarding to Columbia such further relief as this Court deems just and reasonable.

## COUNT II
### (Breach of Contract—Right-of-Way Agreement)

71.    Columbia restates and incorporates by this reference the allegations of paragraphs 1 through 67 above as if set forth more fully herein.

72.    At the time that the Right-of-Way Agreement was executed, both the Hoyts and Columbia had the capacity to contract, and there was no fraud or mistake with respect to the execution of the Right-of-Way Agreement.

73.    The Right-of-Way Agreement is a written agreement that sets out a series of obligations and rights as between the Hoyts and Columbia.

14

74.     The Hoyts executed and agreed to be bound by the Right-of-Way Agreement, which grants Columbia both a permanent right-of-way and temporary construction easements across the Parcel.

75.     Columbia has performed all of its obligations under the Right-of-Way Agreement.

76.     The Hoyts are in breach of his obligations under the Right-of-Way Agreement in that, *inter alia*, the Hoyts have indicated that they intend to prevent Columbia from safely carrying out the Necessary Work on the Parcel. Therefore, the Hoyts, among other things, have indicated their intent not to permit Columbia to exercise the "right to . . . construct, operate, maintain, replace, repair, alter the size of . . . a pipeline for transporting gas" and/or to "perform pre-construction work," as required by the Right-of-Way Agreement. (*See* **Ex. 1**, at p. 1.)

77.     The Hoyts have also indicated their intent not to allow Columbia to exercise its right "to change the location of an installed pipeline and permanent right-of-way area as may be necessary or advisable as the result of any conditions or events beyond [Columbia's] control, such as…ground slips…or the like." (*See* **Ex. 1**, at p. 2-3.)

78.     The Hoyts have further indicated their intent not to allow Columbia to exercise its right to utilize the Temporary Construction Easements to "relocate the pipeline . . . and to conduct all activities incident thereto, including restoration or clean-up activities[]" as required by the Right-of-Way Agreement.  (*See* **Ex. 1**, at p. 3.)

79.     Such actions further breach the Hoyts' obligations under the Right-of-Way Agreement by denying Columbia the lawful and rightful exercise of its secondary easements— *i.e.*, incidental rights arising under the Right-of-Way Agreement, at law and in equity, to do those things which are necessary to Columbia's full enjoyment of the Easements, including, but not limited to, the right to gain access to the Easements for the purpose of safely carrying out the Necessary Work on the Parcel.

80.     The Hoyts' aforementioned conduct will cause damage to Columbia by causing considerable delay in the performance of the Necessary Work. Such delay will cause Columbia to incur significant expense, in an amount in excess of $75,000.00, exclusive of interest and costs. Specifically, Columbia will, among other things, be put at risk of incurring regulatory and statutory fines and penalties; sustaining harm to its reputation; and incurring damages associated with delays in performing the Necessary Work, including, but not limited to, mobilization and demobilization costs and idled equipment and work crew costs, while also delaying this work that is critical to protect the health and safety interests of the public.

WHEREFORE, for the foregoing reasons, Columbia Gas Transmission, LLC, respectfully prays that this Court enter its Order: (i) finding that the Hoyts' actions in preventing Columbia from performing the Necessary Work associated with the Parcel constitute breach of the Right-of-Way Agreement; (ii) awarding Columbia its damages, in an amount to be proven at trial but, in any event, in excess of $75,000.00, exclusive of interest and costs; (iii) awarding Columbia its costs and expenses incurred herein; and (iv) awarding to Columbia such further relief as this Court deems just and reasonable.

### COUNT III
**(Specific Performance—Right-of-Way Agreement)**

81.     Columbia restates and incorporates herein by this reference the allegations of paragraphs 1 through 77 above as if set forth more fully herein.

82.     At the time that the Right-of-Way Agreement was executed, both the Hoyts and Columbia had the capacity to contract, and there was no fraud or mistake with respect to the execution of the Right-of-Way Agreement.

83.     The Right-of-Way Agreement is a written agreement that sets out a series of obligations and rights as between the Hoyts and Columbia, including granting Columbia both a permanent right-of-way and temporary construction easements across the Parcel.

84.    The obligations, rights, and terms of the Right-of-Way Agreement are clear, certain, and fair.

85.    The Right-of-Way Agreement is supported by adequate consideration.

86.    The Right-of-Way Agreement is capable of being performed, and Columbia has performed all of its obligations under the Agreement.

87.    The Hoyts have indicated that they intend to prevent Columbia from carrying out the Necessary Work on the Parcel.

88.    Therefore, the Hoyts, among other things, have indicated their intent not to permit Columbia to exercise its "right to . . . construct, operate, maintain, replace, repair, alter the size of . . . a pipeline for transporting gas" and/or to "perform pre-construction work," as required by the Right-of-Way Agreement. (*See* **Ex. 1**, at p. 1.)

89.    The Hoyts have also indicated their intent not to allow Columbia to exercise its right "to change the location of an installed pipeline and permanent right-of-way area as may be necessary or advisable as the result of any conditions or events beyond [Columbia's] control, such as…ground slips…or the like." (*See* **Ex. 1**, at p. 2-3.)

90.    The Hoyts have further indicated their intent not to allow Columbia to exercise its right to utilize the Temporary Construction Easements to "relocate the pipeline . . . and to conduct all activities incident thereto, including restoration or clean-up activities[]" as required by the Right-of-Way Agreement. (*See* **Ex. 1**, at p. 3.)

91.    Moreover, the Hoyts have indicated their intent to deny Columbia the lawful and rightful exercise of its secondary easements—*i.e.*, incidental rights arising under the Right-of-Way Agreement, at law and in equity, to do those things which are necessary to Columbia's full enjoyment of the Easements, including, but not limited to, the right to gain access to the Easements for the purpose of safely carrying out the Necessary Work on the Parcel.

92.    Columbia seeks the issuance of an order requiring the Hoyts to specifically perform their obligations under the Right-of-Way Agreement, including refraining from preventing, obstructing, or otherwise interfering with Columbia's rights to carry out the Necessary Work on the Parcel.

93.    Columbia has no adequate remedy at law. Absent the Court's issuance of the requested specific performance requiring the Hoyts to perform their obligations under the Right-of-Way Agreement, Columbia will incur substantial damages which, upon information and belief, the Hoyts will be unable to satisfy. Specifically, Columbia will, among other things, be put at risk of incurring regulatory and statutory fines and penalties; sustaining harm to its reputation; and incurring damages associated with delays in performing the Necessary Work, including, but not limited to, mobilization and demobilization costs and idled equipment and work crew costs, while also delaying this work that is critical to protect the health and safety interests of the public.

WHEREFORE, for the foregoing reasons, Columbia Gas Transmission, LLC, respectfully prays that this Court enter its Order: (i) requiring the Hoyts to perform their obligations under the Right-of-Way Agreement, including refraining from preventing, obstructing, or otherwise interfering with Columbia's rights to perform the Necessary Work; (ii) awarding Columbia its costs and expenses incurred herein; and (iii) awarding to Columbia such further relief as this Court deems just and reasonable.

### COUNT IV
**(Declaratory Judgment)**

94.    Columbia restates and incorporates herein by this reference the allegations of paragraphs 1 through 90 above as if set forth more fully herein.

95.    The Hoyts have indicated that they will not permit Columbia to exercise its rights under the Right-of-Way Agreement, at law or in equity, to perform the Necessary Work.

Columbia respectfully requests that this Court declare Columbia's rights under the Right-of-Way Agreement, at law or in equity, to perform the Necessary Work.

96.     An actual justiciable controversy exists between Columbia and the Hoyts relative to Columbia's rights to perform the Necessary Work.

97.     Legally cognizable interests are at stake should the Necessary Work not be permitted to proceed in its scheduled fashion, including, without limitation, Columbia being put at risk of incurring regulatory and statutory fines and penalties, harm to its reputation, and damages associated with delays in performing the Necessary Work, while also delaying this work that is critical to protect the health and safety interests of the public in general.

98.     The instant controversy is ripe for judicial determination. Columbia's rights to perform the Necessary Work under the Right-of-Way Agreement, at law or in equity, may be readily determined upon a complete set of facts which are readily ascertainable.

99.     Columbia has no adequate remedy at law, as absent an advance determination of its rights to perform the Necessary Work, it will incur substantial damages which, on information and belief, the Hoyts will be unable to satisfy. Specifically, Columbia will, among other things, be put at risk of incurring regulatory and statutory fines and penalties; sustaining harm to its reputation; and incurring damages associated with delays in performing the Necessary Work, including, but not limited to, mobilization and demobilization costs and idled equipment and work crew costs, while also delaying this work that is critical to protect the health and safety interests of the public.

WHEREFORE, for the foregoing reasons, Columbia Gas Transmission, LLC, respectfully prays that this Court enter its Order: (i) declaring Columbia's rights to perform the Necessary Work associated with the Parcel under the Right-of-Way Agreement; (ii) awarding

Columbia its costs and expenses incurred herein; and (iii) awarding to Columbia such further

relief as this Court deems just and reasonable.

Dated: June 16, 2022                    Respectfully submitted,

                                        By: /s/ Jamison H. Cooper
                                        Jamison H. Cooper, W. Va. Bar # 8043
                                        Cooper Law Offices, PLLC
                                        240 W. Main Street
                                        Bridgeport, WV 26330
                                        T: (304) 842-0505
                                        F: (304) 842-0544
                                        jami.cooper@cooperlawwv.com

                                        David M. Fedder, (pro hac vice application to be
                                        submitted)
                                        120 S. Central Ave., Suite 1800
                                        St. Louis, Missouri 63105
                                        Ph: (314) 854-8600
                                        dmf@carmodymacdonald.com

                                        *Counsel for Plaintiff Columbia Gas
                                        Transmission, LLC*

## VERIFICATION

I hereby declare, under penalty of perjury, that I have read Plaintiff Columbia Gas Transmission, LLC's Complaint and Request for Injunctive and Other Relief, and state that the factual averments contained therein are true and complete to the best of my knowledge, information, and belief.

Dated: June 16, 2022

Michelle Oquendo, Project Manager

TC Energy